PETER NICHOLS, APPELLANT, *v.* PETER VOORHIS AND OTHERS, COMMISSIONERS OF HIGHLAND AVENUE, RESPONDENTS.

*Cloud upon title — assessment sale — chapter 670 of 1871 — deed — presumptive evidence of regularity.*

Section 12 of chapter 670 of 1871, authorizing the construction of an avenue in Rockland county, provides that, in case the assessments imposed thereunder remain unpaid for the time therein specified, the commissioners are authorized to sell the lands so assessed "in the same manner as the comptroller of the State is authorized to sell lands for non-payment of taxes * * * convey said lands, and do each and every act and thing that said Comptroller is authorized by law to do on sales for non-payment of taxes." *Held,* that it was the intention of the legislature to create the same presumption in favor of the regularity of sales had under this act, as exists in the case of sales by the comptroller, and that the deeds given by the commissioners were presumptive evidence of the regularity of all the proceedings, prior to and including the sale, in pursuance of which they were given.

Accordingly, where land was sold for an assessment, laid under the said act, *held,* that a party alleging that such sale was void, on account of irregularities occurring prior thereto, might maintain an action to have the same set aside as a cloud upon his title, as such irregularity would not appear upon the face of the papers which the purchaser would be required to produce to obtain possession of the land.

APPEAL from a judgment entered upon an order sustaining a demurrer to the complaint herein.

The action was brought to vacate an assessment imposed upon lands of the plaintiff, under the provisions of chapter 670 of 1871, authorizing commissioners to lay out an avenue in Rockland county.

The complaint set forth the act, and that the commissioners appointed thereby had taken proceedings thereunder, and imposed an assessment upon the lands of the plaintiff, which they claimed the right to enforce, and to collect which a warrant had been issued, under which certain property of the plaintiff had been seized, and that said proceedings were void for irregularities not appearing on the face thereof, and to establish which oral evidence would be required, and prayed that the assessment might be vacated, and the commissioners and their successors be perpetually enjoined and restrained from collecting or enforcing the same.

*C. P. Hoffman*, for the appellant.

*Samuel J. Crooks*, for the respondents.

DYKMAN, J.:

This is an action to remove a cloud from the title of the plaintiff's land. Courts of equity have always granted this kind of relief in a proper case, and the cases have been so frequent in ours for the last few years, that the principles upon which they are determined have come to be well understood. When the claim or lien purports to affect real estate, and appears on its face to be valid; when the defect in it can be made to appear only by extrinsic evidence which will not necessarily appear on proceedings by the claimant thereof to enforce the lien, there is a case presented for invoking the aid of a court of equity to remove the lien which is a cloud upon the title. When the extrinsic evidence is oral solely, the rule becomes the stronger. (*Marsh* v. *City of Brooklyn*, 59 N. Y., 283.)

While this rule is very specific and easily understood, it is not always so easily applied to the different cases as they arise. This case is itself an apt illustration of this remark, because if the assessment complained of is void on its face, or if the proof necessary to be made to enable any party to enforce it or claim under it will show that it is void, then the action cannot be maintained. The

reason of this is, that the party who apprehends the danger has his defense always at hand, and the courts will not, therefore, call the parties before them and compel them to litigate in advance, but will wait until a claim is made and then determine the question. But if a claimant could establish a title upon this assessment by the record alone, then there is such a cloud as should be dispelled by a court of equity.

The proper inquiry in this case seems, therefore, to be whether a claimant could establish a title upon this assessment by the record alone. The law under which the assessment is made provides that it may ripen into a title as follows : Said commissioners are hereby authorized to sell the lands assessed, upon which the said assessment shall remain unpaid for the space of thirty days after the time for and the return of said warrant by said collector or collectors, as may appear from the return of said collector or collectors, in the same manner as the comptroller of the State is authorized to sell lands for the non-payment of assessments for taxes, and said commissioners may upon such sales, and after the expiration of the time for redemption allowed by law, convey said lands, and do each and every act and thing that the said comptroller is authorized by law to do on sales for non-payment of taxes. (Chap. 670, Laws 1871, § 12.)

As this provision clothes these commissioners with the same powers that are given to the comptroller, on sales of land for non-payment of taxes, it will be proper to ascertain now what these powers are. The provision of our statute which relates to the deeds of conveyance executed by the comptroller of the State, is as follows : "All conveyances hereafter executed by the comptroller of lands sold by him for taxes, shall be presumptive evidence that the sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular according to the provisions of this act, and all laws directing or requiring the same or in any manner relating thereto." (1 R. S. [5th ed.], 935, § 101.)

It will be seen from this extract that the comptroller's deeds are presumptive evidence that his sale and all proceedings prior thereto, including the assessment, were regular. Did the legislature intend

to give the same effect to the deeds of conveyance of these commissioners? It is not clear that such was the legislative intent, but if it was not, why were the commissioners authorized to convey these lands, and do each and every act and thing in the same manner that the comptroller is authorized by law to do, on sales for non-payment of taxes. This language is quite full, and it seems to be a very narrow construction to hold that it simply has relation to the simple act of executing the deeds. If it was intended to be confined to that, why was any reference made to the comptroller at all? His simple execution of a deed is no different from that of any other person, but these commissioners are authorized to convey these lands and do every act and thing that the comptroller is authorized by law to do, on sales for non-payment of taxes, and on such sales the comptroller is authorized to give conveyances which shall be presumptive evidence, that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the time allowed to redeem were regular. Was it not, therefore, the intention of the legislature to give the commissioners the same power? We think it was, and that their deed of conveyance when executed and delivered, will have the same effect and will therefore be presumptive evidence of the regularity of all their proceedings leading up to the conveyance including the assessment, and that in any proceeding to obtain possession under the conveyance, it will not be necessary to give any evidence which will disclose the defects complained of in this action, as the mere production of the commissioners' deed of conveyance will be all that will be necessary. We then have a case where the defects complained of can be made to appear only by extrinsic evidence which will not necessarily appear in proceedings to enforce the lien, and where the extrinsic evidence is oral entirely. The case therefore seems to be a proper one for the interference of a court of equity, within the rules laid down in the fore-part of this opinion.

The judgment appealed from, must therefore be reversed, with costs.

Present — PRATT and DYKMAN, JJ. BARNARD, P. J., not sitting.

Judgment reversed, with costs and disbursements.